UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FIDELIA ELEAZU and INNOCENT ELEAZU,<br><br>Plaintiffs<br><br>v.<br><br>JP MORGAN CHASE,<br><br>Defendant. | Case No. 20-cv-11913-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                           **June 14, 2021**

**I.   Introduction**

Plaintiffs Fidelia Eleazu ("Mrs. Eleazu") and Innocent Eleazu ("Dr. Eleazu") (collectively, the "Eleazus") have filed this lawsuit against Defendant JP Morgan Chase ("Chase") alleging breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), violation of the Real Estate Settlement Procedures Act ("RESPA") and 12 U.S.C. § 2605 (Count III), conversion (Count IV), negligence (Count V), violation of the Fair Debt Collection Act ("FDCPA"), violation of 15 U.S.C. § 1693 (Count VI) and lack of mutuality or agreement (Count VII).  D. 14.  Chase has moved to dismiss.  D. 15.  For the reasons stated below, the Court ALLOWS the motion.

**II.   Standard of Review**

Chase moves to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant can move to dismiss based upon a lack of subject matter jurisdiction.

1

"Because federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed." Fabrica de Muebles J.J. Alvarez, Incorporado v. Inversiones Mendoza, Inc., 682 F.3d 26, 32 (1st Cir. 2012) (quoting Viquiera v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)). Once a defendant challenges the jurisdictional basis for a claim in federal court pursuant to Fed. R. Civ. P. 12(b)(1), plaintiffs have the burden of proving that jurisdiction exists. Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007).

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a defendant challenges whether the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

### III.    Factual Background

The following facts are as alleged in the amended complaint, D. 14, and the Court accepts them as true for the purpose of resolving the motion to dismiss. The Eleazus, husband and wife, reside at 69/71 Cedar Street, Lynn, Massachusetts ("the Property"). D. 14 ¶ 1. On August 31, 2000, the Eleazus bought the Property for $171,900 with a 30-year fixed rate mortgage from Bank

of America, N.A. Id. ¶ 3. The quitclaim deed, dated August 31, 2000, names the Eleazus as husband and wife and joint owners of the Property. Id. ¶¶ 4-5. On June 30, 2005, Washington Mutual Bank, FA ("Washington Mutual") refinanced the mortgage on the Property. Id. ¶ 6. For the purposes of a motion to dismiss this Court may take judicial notice of the Promissory Note ("Note"), D. 1-3 at 84-89, executed by Mrs. Eleazu on June 30, 2005 as well as the Mortgage ("Mortgage"), D. 1-3 at 58-78, executed by the Eleazus the same day. D. 24 at 1. The refinancing provided a loan for $50,000 to Mrs. Eleazu, raising the total loan amount to $221,900.00. Id. ¶¶ 48-50. Chase claims, however, that the modified unpaid balance is $254,137.60. Id. ¶ 51. As alleged, without providing Mrs. Eleazu with an explanation of what she was signing, Washington Mutual presented an interest rate of 1.25 percent which was "quickly jacked up" later. Id. ¶¶ 19-21. Mrs. Eleazu's monthly earnings were also represented to be $4,040, double their actual amount of $2,000, as a part of "a scheme to qualify her for a loan and remove [Dr. Eleazu]." Id. ¶ 22. Washington Mutual changed the Mortgage from fixed to variable without Dr. Eleazu's consent. Id. ¶ 24. After refinancing the Mortgage, Washington Mutual later increased the interest rate and manipulated the monthly mortgage payment and the escrow. Id. ¶ 25. The Eleazus further allege that they have "always paid" their monthly mortgage, yet the principal balance "[h]as not shown any appreciable movement for more than 15 years of mortgage payments." Id. ¶¶ 26-27.

On April 1, 2006, while talking to customer service, the Eleazus were told that the sum of $569.76 was deducted from the principal balance to make up for a "monthly mortgage shortfall." Id. ¶ 41. The Eleazus, however, contend that there was no shortfall. Id. ¶ 42. They sent a letter titled "Protest Against Tampering with the Loan #0701946766," but received no response. Id. ¶¶ 43-44. On or about October 10, 2007, the Eleazus were informed that they owed $14,551.49 in

unpaid interest loan payments.  Id. ¶ 30.  The Eleazus wrote Washington Mutual asking to correct the statement but did not receive a response.  Id. ¶¶ 31-32.

As alleged, the Eleazus have repeatedly requested to re-modify and reduce the mortgage payments to no avail.  Id. ¶ 53.  Although the Eleazus have "submitted documents for re-modification," Chase continues to "ask that [they] re-submit documents."  Id. ¶ 55.  At a certain point, Chase indicated that the Eleazus had met all documentation requirements, but later denied their modification request.  Id. ¶¶ 56-57.  Chase subsequently threatened the Eleazus with foreclosure, which led them to re-apply for mortgage assistance.  Id. ¶¶ 58-59.  A Chase relationship manager contacted the Eleazus indicating that Chase was unable to grant their application for mortgage assistance, "except the loan [was] extended [until] the year 2040."  Id. ¶ 60.  This new offer by Chase, including its variable rate, increased the Eleazus' monthly mortgage instead.  Id. ¶ 61.

**IV.     Procedural History**

Plaintiffs instituted this action on or about August 31, 2020 in Essex Superior Court.  D. 1-3.  Chase removed the case to this Court.  D. 1.  Chase has now moved to dismiss.  D. 15.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 26.

**V.      Discussion**

      **A.     Subject Matter Jurisdiction**

           *1.     Failure to Exhaust*

Chase contends that this Court lacks subject matter jurisdiction because the Eleazus failed to comply with the administrative claims processing procedures under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821 *et seq.*  FIRREA, particularly 12 U.S.C. § 1821(d)(3)-(13), provides "a streamlined method for resolving most

claims against failed institutions in a prompt, orderly fashion, without lengthy litigation." Marquis v. FDIC, 965 F.2d 1148, 1152 (1st Cir. 1992).  FIRREA applies here because Washington Mutual was placed into receivership with the Federal Deposit Insurance Corporation ("FDIC") on September 25, 2008.[1]  The FDIC, once a receiver, publishes notice requiring claims to be filed by a specified date.  12 U.S.C. § 1821(d)(3)(B)(i).  The FDIC then has 180 days to approve or deny a filed claim.  12 U.S.C. § 1821(d)(5)(A)(i).  Disappointed claimants have the option of either an administrative review process or seek judicial review in federal district court.  12 U.S.C. § 1821(d)(6)(A).  "This claims-processing regime is not optional:  participation in it is mandatory for all parties asserting claims against failed institutions.  The failure to pursue an administrative claim is fatal."  Demelo v. U.S. Bank, Nat. Ass'n, 727 F.3d 117, 121-22 (1st Cir. 2013) (internal quotation marks omitted).

Specifically, FIRREA provides that "no court shall have jurisdiction over (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of [the failed] institution or the [FDIC] as receiver."  12 U.S.C. § 1821(d)(13)(D).  "This language operates to strip the federal district courts of subject-matter jurisdiction whenever a plaintiff tries to pursue a covered claim without going through the claims-processing regime."  Demelo, 727 F.3d at 122.  See Acosta-Ramirez v. Banco Popular de P.R., 712 F.3d 14, 19-20 (1st Cir. 2013); Simon v. FDIC, 48 F.3d 53, 56-57 (1st Cir. 1995).

---

[1] The Court may take judicial notice of this fact.  D. 24 at 2.  See Yeomalakis v. F.D.I.C., 562 F.3d 56, 59 (1st Cir. 2009) (recognizing that FDIC was appointed Washington Mutual's receiver on September 25, 2008).

As Chase notes, Plaintiffs' claims against them "stem from the purported actions (and inactions) of [Washington Mutual] as originator, owner, and servicer of the [m]ortgage" and unpaid interest totaling $21,438.27.  D. 16 at 4;  see Demelo, 727 F.3d at 124 (holding that the "claims-processing requirements and corresponding jurisdictional bar" precluded claims against U.S. Bank because "it acquired the mortgage by way of the powers vested in the FDIC under FIRREA").  In accordance with FIRREA, the FDIC required that all claims against Washington Mutual had to be filed on or before December 30, 2008.  D. 24 at 2;  see Lewis v. F.D.I.C., No. 08-cv-11508-NMG, 2010 WL 1529479, at *1 (D. Mass. Apr. 13, 2010) (noting that "the FDIC published several notices in the Wall Street Journal" starting in October 2008 "advising creditors of [Washington Mutual] to present all claims they had against [Washington Mutual] by December 30, 2008").  As Chase notes, here, it is undisputed that Plaintiffs' mortgage loan "was a [Washington Mutual] asset during its FDIC receivership."  D. 16 at 6.  Accordingly, and as aforementioned, the Eleazus were to have filed any claims against Washington Mutual with the FDIC no later than December 30, 2008.

The fact that the Eleazus point to a January 8, 2008 complaint that they filed with the Office of Thrift Supervision, D. 23 at 4;  D.14 at ¶¶ 74,76,82, does not satisfy FIRREA exhaustion when such filing predated Washington Mutual's receivership with the FDIC.  The Eleazus did not present their claims arising from the origination of the loan from Washington Mutual by December 30, 2008.  Thus, the failure to exhaust under FIRREA requirements prior to filing suit bars such claims and this Court has no subject matter jurisdiction as to same.

   **B.**  **Dismissal is Also Warranted under Fed. R. Civ. P 12(b)(6)**

Even if dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction was not warranted (and, to the extent that some of the claims the Eleazus raise do not concern the

origination of the Note and Mortgage), dismissal of their claims is also warranted under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

> 1. *Chase is Entitled to Dismissal of the Eleazus' Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing Claims (Counts I and II)*

In Counts I and II, the Eleazus allege breach of contract and breach of implied covenant of good faith and fair dealing, respectively. D. 14 at 4-6. Both claims fail as a matter of law.

To state a claim for a breach of contract under Massachusetts law, a plaintiff must allege that "a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiff sustained damages as a result of the breach." Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 232 (1st Cir. 2013) (citation omitted). It is not clear from the complaint which contract the Eleazus are claiming Chase breached since they reference several. To the extent that they rely upon their original mortgage with Bank of America, there is no breach of claim against Chase for same since neither Chase nor Washington Mutual was a party to that contract. See In re Tri-Star Techs. Co., Inc., 260 B.R. 319, 327 (Bankr. D. Mass. 2001) (noting that "only parties to an agreement or contract may be held liable under its terms").

To the extent the Eleazus rely upon the Mortgage, those claims also fail to state claim. Even taking their well pled factual allegations (and the documents they attach to their complaint which are considered incorporated in their complaint), Trans-Spec Truck Service, Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008)), as true, they do not state a plausible claim. To the extent that the Eleazus contend that Chase breached the Mortgage by removing Dr. Eleazu from the Mortgage without consent, by replacing the fixed rate on the Mortgage with a variable rate and by charging a "so-called" unpaid interest of $21,428.27, D. 14 ¶¶ 102-104, the exhibits to their complaint show that both Dr. Eleazu and Mrs. Eleazu were signatories to the Mortgage, D.

1-3 at 58-78, see D. 16-1 at 2 (acknowledging that Dr. Eleazu made and executed Mortgage), and pursuant to the Adjustable Rate Rider therein, it allowed for "changes in interest rate and [their] monthly payment."  D. 1-3 at 74.  The Eleazus initialed the first page and signed the rider acknowledging that they accepted and agreed to the terms and covenants contained within the Mortgage. Id.  To the extent that they rely upon the Mortgage to allege Chase's breach of contract by charging them $21,438.27 in unpaid interest in January 2009, D. 14 ¶¶ 96,104, such claim is barred by the six-year statute of limitations for such claim.  See Nortek, Inc. v. Liberty Mut. Ins. Co., 65 Mass. App. Ct. 764, 768 (2006) (citing Mass. Gen. L. c. 260, § 2).  Accordingly, Plaintiffs' breach of contract claims arising from the Mortgage also do not state a claim.

To the extent that the Eleazus rely upon the loan modification for a claim for breach of contract, as counsel at the hearing suggested they were, such claim is also time barred.  See Orbusneich Med. Co. v. Bos. Sci. Corp., No. 09-cv-10962-RGS, 2011 WL 1086015, at *2 (D. Mass. Mar. 21, 2011) (citing Mass. Gen. L. c. 260, § 2).  Even if it were not time barred, the Eleazus have not plausibly alleged what the alleged breach would be since the loan modification agreement promised only consideration of a loan modification and did not promise such modification or the terms of same even if they provided all requested documents.  D. 1-3 at 30; see Vil v. Wells Fargo Home Mortgage, No. 17-cv-12121-ADB, 2019 WL 569846, at *8 (D. Mass. Feb. 12, 2019).

For all of these reasons, the Eleazus' breach of contract claims fail.  Similarly, the claims under Count II for breach of implied covenant of good faith and fair dealing also fail.  See George v. Stonebridge Mortg. Co., LLC, 988 F. Supp. 2d 142, 150 (D. Mass. 2013) (finding dismissal of breach of the implied covenant of good faith and fair dealing claim is proper where "complaint

does not allege facts that plausibly suggest that defendants failed to perform under the terms of any contract or that they injured plaintiffs' rights under a contract").

### 2. The Eleazus' RESPA Claim (Count III) Fails

The Eleazus allege that Chase violated RESPA by failing to respond appropriately to their qualified written requests ("QWR") no later than 60 business days after receipt and failed to correct their account in violation of 12 U.S.C. § 2605(e)(2). D. 14 at ¶¶ 134-135. To state a claim under RESPA pursuant to 12 U.S.C. § 2605, a plaintiff must show: "(1) that the servicer failed to comply with the statute's [QWR] rules; and (2) that the plaintiff incurred actual damages as a result of this failure." Okoye v. Bank of New York Mellon, No. 10-cv-11563, 2011 WL 3269686, at *17 (D. Mass. July 28, 2011). Alternatively, a plaintiff may also plead statutory damages, requiring a "showing of a pattern or practice of noncompliance by the servicer." Afridi v. Residential Credit Cols., Inc., 189 F. Supp. 3d 193, 200 (D. Mass. 2016) (citation omitted). Although the Eleazus contend that Chase failed to respond appropriately within 60 days of receipt, RESPA only requires servicers to respond to "a qualified written request from the borrower . . . for information relating to the servicing" of the mortgage loan. See 12 U.S.C. § 2605(e)(1)(A); 12 C.F.R. §§ 1243.31, 1024.32; O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 36 (D. Mass. 2014) (requiring that "the substance" of a borrower's request "must pertain specifically to servicing [to] trigger an obligation to respond under RESPA"). Pursuant to 12 U.S.C. § 2605(e)(1)(B)(ii), requests must also "include a statement of the reasons for the belief of the borrower . . . that the account is in error or provide sufficient detail to the servicer regarding other information sought by the borrower."

Here, the amended complaint does not contain any allegations about what specific inquiries the Eleazus submitted or even when they did so for stating a plausible claim. See O'Connor, 992

9

F. Supp. 2d at 37 (dismissing RESPA claim "[g]iven the [b]ank's response to an overly broad information request"). Accordingly, Count III also does not state a plausible claim.

        3.      *Dismissal of the Claim for Conversion (Count IV) is Also Warranted*

Plaintiffs also asserts a claim for conversion, alleging that Chase's "action in collecting and incorrectly applying payments from [them] when it knew or should have known that the fees and charges it was asserting were not owed constitutes the tort of conversion." D. 14 ¶ 139. For such claim to proceed, the Eleazus must plausibly allege that Chase "intentionally or wrongfully exercised acts of ownership, control or dominion over personal property to which [they have] no right of possession at the time." Grand Pac. Fin. Corp. V. Brauer, 57 Mass. App. Ct. 407, 412 (2003) (citation omitted). Central to their claim for conversion are Mortgage payments, that as Chase aptly notes were not made "with the expectation that they would be returned to them . . . [r]ather, they made mortgage payments pursuant to their contractual obligation to do so pursuant to the Mortgage and Note." D. 16 at 17. Payments of this sort do not give rise to a conversion claim since "money voluntarily paid under a claim of right, with full knowledge of the facts on the part of the one making the payment, cannot be recovered back unless there is fraud or concealment or compulsion by the party enforcing the claim." Carey v. Fitzpatrick, 301 Mass. 525, 527 (1938) (collecting cases); see Pare v. Northborough Capital Partners, LLC, 133 F. Supp. 3d 334, 337 (D. Mass. 2015) (holding conversion claim was precluded where a trustee of real estate trust agreed to lender's application of trust's insurance proceeds to limited liability company's loan). Accordingly, this Court concludes that Count IV does not state a plausible claim.

        4.      *Dismissal of the Negligence Claim is Warranted (Count V)*

The Eleazus assert a negligence claim, alleging that Chase negligently serviced the loan and breached its duty to them to maintain proper and accurate loan records and accounted/ serviced

the loan in a negligent manner. D. 14 ¶ 141. For a negligence claim, the Eleazus must allege that: (1) they are owed a legal duty by Chase; (2) Chase breached that duty; (3) they suffered actual damage or injury; and (4) there is causation between Chase's breach and their damage. Doe v. Emerson Coll., 153 F. Supp. 3d 506, 514 (D. Mass. 2015) (citing Jorgensen v. Massachusetts Port Auth., 905 F.2d 515, 522 (1st Cir. 1990)). Here, the negligence claim fails on the first element since, as a matter of law, Chase does not owe a duty to the Eleazus. See Afridi, 189 F. Supp. 3d at 199 (noting that "under Massachusetts law, the relationship between a mortgagor and mortgagee does not give rise to an independent duty of care" and thus finding that "the plaintiff [had] failed to demonstrate an independent duty of care sufficient to support his negligence claim"); MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 495 (1st Cir. 2013) (noting that statutory violations by a mortgagee still "cannot give rise to a negligence claim when there is no independent duty of care between the parties"). Accordingly, Count V fails.

### 5. The FDCPA Claim (Count VI) Also is Not Plausibly Alleged

The Eleazus asserts a violation of the Fair Debt Collection Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Specifically, they allege that Chase violated the FDCPA by "using unfair and unconscionable means to collect debt owed . . . including collecting and attempting to collect interest and other charges, fees and expenses not authorized by the original loan agreement or otherwise legally chargeable." D. 14 ¶ 143. They further allege that Chase violated the FDCPA by misrepresenting the character, amount and legal status of their debt or failing to accurately communicate same, id. at ¶ 144, 145, and by threatening to foreclose on their home even though Chase had no right of possession of the property, id. at ¶ 145. "A viable claim for violation of the FDCPA requires that a plaintiff establish three elements: (1) that [the plaintiff] was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the

FDCPA, and (3) defendants engaged in an act or omission prohibited by the FDCPA." O'Connor, 992 F. Supp. 2d at 30-31 (internal quotations and citations omitted).  Further, to "trigger the protections of the statute, the funds at issue must constitute a debt, and the challenged activity must be conducted by a party that falls within the statutory definition of 'debt collector.'"  Skerry v. Massachusetts Higher Educ. Assistance Corp., 73 F. Supp. 2d 47, 51 (D. Mass. 1999).

Central to the Eleazus' claim is whether Chase is a debt collector for the purposes of the FDCPA.  Section 1692a(6) of the FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts . . . ."  15 U.S.C. § 1692a(6).  That section further provides that "[f]or the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."  Id.  "The restrictions of the FDCPA only apply to those defendants who meet the definition of 'debt collector.'"  O'Connor, 992 F. Supp. 2d at 31.  Here, Chase "sought payment of . . . fees . . . due to itself, not 'owed or due to another,'" and thus "cannot be subject to FDCPA liability as a result of its conduct."  Id.; see Chiang v. Verizon New England Inc., 595 F.3d 26, 41 (1st Cir. 2010) (noting that "[c]reditors collecting on their own accounts are generally excluded from the [FDCPA's] reach").  As such, Chase is not a debt-collector under the FDCPA and the Eleazus' FDCPA claim fails as a result.

      6.     *Count VII Does Not State a Claim*

Finally, the Eleazus bring forth a claim for lack of mutuality or agreement.  Even interpreting this claim as alleging that the Mortgage is unenforceable because of lack of mutuality about its terms, like the breach of contract claim, the fact that Mrs. Eleazu executed the Note (attached and incorporated into the complaint) on June 30, 2005, D. 1-3 at 84-89, and that the

Eleazus signed the Mortgage (attached and incorporated into the complaint), D. 1-3 at 58-78, undercuts any claim for lack of mutuality.  It is well established that "to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement."  Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000).  As noted above, the Eleazus initialed the first page and signed the adjustable-rate rider within the Mortgage acknowledging that they accepted and agreed to the terms and covenants contained within same.  D. 1-3 at 74.  As such, this Court does not conclude that the Eleazus plausibly state a claim alleging that the Mortgage is unenforceable due to lack of mutuality.

**VI.     Conclusion**

For the foregoing reasons, the Court ALLOWS Chase's motion to dismiss, D. 15.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge